LLOYD A. DOSH, TRUSTEE FOR THE HEIRS OF CHARLES E. WHITE, v. JOHN C. ELIOFF, JR.

222 N. W. 2d 326.

September 13, 1974—No. 44568.

*David W. Nord* and *Joseph H. Rivard,* for appellant.

*Murnane, Murnane, Battis & Conlin, Robert W. Murnane,* and *James J. Boyd,* for respondent.

Heard before MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

This is a wrongful death action commenced by plaintiff, Lloyd A. Dosh, trustee for the heirs of Charles E. White, decedent, alleging that defendant, John C. Elioff, Jr., negligently operated his automobile and caused the death of decedent. A jury returned a special verdict finding that both parties were 50 percent causally negligent, and judgment for defendant was ordered. Plaintiff appeals from an order denying his alternative motion for judgment n.o.v. or a new trial. We reverse and grant a new trial.

The accident occurred in St. Paul on November 17, 1971, at sometime after 5:30 p. m. when defendant was on his way home from work. It was raining lightly and was very dark. Defendant was driving his automobile north on Edgcumbe Road, which is a north-south street with two lanes of traffic in either direction. The accident occurred at the intersection of Munster Street and Edgcumbe Road. Edgcumbe Road is divided by a grassy median, which extends to the north and south of its intersection with Munster Street. As defendant approached the scene of the accident, he was traveling in the left-hand lane of the two northbound lanes on Edgcumbe. Defendant, the only surviving witness, estimated his speed to be 25 to 30 miles per hour. There were no vehicles immediately ahead of defendant's car; his windshield wipers were "on" and in good working order; and his headlights were "on" and working properly. Defendant did not see decedent at any time prior to the actual impact. Defendant did not apply his brakes prior to impact, but did apply them upon striking decedent. Defendant testified at trial that the impact occurred in the middle of the intersection; he had testified earlier in a deposition that he did not know exactly where the impact

occurred, but thought it happened in the middle of the intersection.

Two St. Paul police officers, Arthur Renteria and Alan Johnson, were called to the scene of the accident about 6 p. m. Officer Renteria said that it was raining heavily and that it was dark, with some lightning, when they arrived on the scene. He said that it was very dark at the point where the accident occurred and that decedent was dressed in dark clothing. When the officers arrived they found defendant's car in the left-hand northbound lane of Edgcumbe Road, 9 paces north of the southerly tip of the median on the north side of Munster. This measurement was to the front end of the car, which was approximately 12 feet long. Decedent's body was lying 12 feet north of the front end of defendant's car. The officers measured skid marks at the scene, which extended 60 feet on the right side of the car and 62 feet on the left. The skid marks began a few feet north of the north tip of the center median at the south side of the intersection. The officers also found debris in the center of the intersection consisting of broken glass and dirt. Defendant's car had a dent in the left side of the hood, and the windshield was broken.

The issues are whether the trial court erred (1) in submitting the question of decedent's negligence to the jury, and (2) in allowing a police officer to testify that no traffic ticket was issued to defendant as a result of the accident.

■ Minn. St. 602.04 provides:

"In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

Plaintiff argues that there was no credible testimony pre-

sented at trial to overcome the presumption of due care and that, therefore, it was error to submit the question of decedent's negligence to the jury and to deny plaintiff's motion for judgment n.o.v. Plaintiff contends that in spite of defendant's testimony that the accident happened in the middle of the intersection, the physical evidence compels the conclusion that the accident happened in the crosswalk. Plaintiff relies on Minn. St. 1971, § 169.21, subd. 2, which provides generally that the driver of a vehicle shall yield the right-of-way to a pedestrian crossing a roadway within a crosswalk.

Defendant counters by pointing to the evidence that, in addition to his testimony that the accident occurred in the intersection, broken glass and other debris were found in the middle of the intersection. Defendant contends that this evidence afforded a basis for the jury to conclude that the impact took place somewhere other than in the crosswalk. Defendant also points out that Minn. St. 1971, § 169.21, subd. 2, states in part that "no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

Without unduly lengthening this opinion, our examination of the testimony convinces us that the trial court did not err in submitting the question of decedent's negligence to the jury. There was sufficient evidence to support defendant's claim that the accident happened at a point other than in the crosswalk, and the trial court's denial of plaintiff's motion for judgment n.o.v. is affirmed.

■ At trial, Police Officer Alan Johnson, after testifying to physical evidence of skid marks from defendant's car, was asked on cross-examination by defendant's counsel:

"Q There were no tags issued in this accident, were there, Officer?

"MR. RIVARD: Objection, completely irrelevant and immaterial * * *.

"MR. MURNANE: I submit that it is proper.

"MR. RIVARD: It is not proper * * *.

"THE COURT: Objection sustained.

"MR. MURNANE: Might we approach the bench, Your Honor?

"THE COURT: Surely.

"(Off record discussion at the bench)

"Q (By Mr. Murnane): Officer, you issued no tags to my client, Mr. Elioff, as a result of this accident, did you?

"A No, sir.

"MR. RIVARD: Your Honor, for the record I want to object to that question as being completely improper—

"THE COURT: Overruled.

"MR. RIVARD: —and immaterial.

"THE WITNESS: That is correct. I issued no tags.

"MR. MURNANE: Thank you. I have nothing further."

Plaintiff argues that this evidence was offered to show that in the opinion of Officer Johnson there had been no negligence on the part of defendant. Plaintiff contends that allowing this evidence was reversible error since this is the very issue the jury was to determine.

Defendant, however, asserts that plaintiff, through the testimony of Officer Johnson regarding the length of the skid marks left by defendant's car, was attempting to draw an inference that when the accident occurred defendant was driving at an excessive rate of speed, and therefore the evidence that a ticket was not issued was proper rebuttal. Defendant relies on LeClair v. Sickler, 275 Minn. 320, 146 N. W. 2d 853 (1966), as authority that such evidence is admissible.

In LeClair the defendant was the driver of an automobile that struck and seriously injured a pedestrian. One of the investigating police officers testified that the defendant had been vague as to his speed at the time of the accident, but had suggested to the officer that it might have been 35, 40, or 45 miles per hour, all in excess of the legal speed limit at the point of the accident. On direct examination the defendant was asked whether the investigating police officers had issued a ticket to him for a traffic

violation, and the trial court, over objection, permitted the defendant to answer that no ticket had been issued. In LeClair the defendant argued that the purpose of asking whether he had received a ticket was merely to test the trustworthiness of the officers as witnesses by ascertaining whether they had performed their official duty by issuing a traffic ticket if there were an admitted violation of a traffic statute. We concluded that the defendant's argument was correct and stated (275 Minn. 325, 146 N. W. 2d 856) :

"* * * We agree with the trial court that, to offset and impeach such testimony, the alleged wrongdoer should have the opportunity to show that the officer did not issue a ticket to make an arrest."

In our judgment the LeClair case is clearly distinguishable from this case. In LeClair there was direct evidence that the defendant had admitted he was driving in excess of the legal speed limit. The testimony that the officers did not issue a speeding ticket tended to impeach and diminish the effect of that evidence. After carefully reviewing the record in this case, it is clear that the evidence concerning skid marks was offered by plaintiff to prove the point of impact and not to show speed. There was no attempt by plaintiff, either through the police officers or any other witnesses, to show excessive speed on the part of defendant. Defendant himself testified that he was driving 25 to 30 miles an hour. While the final arguments of counsel to the jury were not recorded, plaintiff has not contended in this court, either in the brief or at oral argument, that defendant was driving at an excessive rate of speed. Further, neither officer testified to any oral admission by defendant that he was driving at an excessive rate of speed. Testimony concerning the issuance or nonissuance of a traffic ticket is generally irrelevant and potentially prejudicial to the issues in a personal injury action and is admissible only under certain narrow circumstances. The LeClair case should be strictly construed to allow such testimony

only where it directly impeaches previous evidence of driving misconduct. Since those circumstances are not present in this case, we hold that it was error to admit evidence that defendant was not issued a ticket for speeding.

The jury found both decedent and defendant to be equally negligent in causing the accident. The evidence is such that admission of the officer's testimony concerning the traffic ticket could reasonably have affected the outcome. Hence, we conclude that a new trial should be granted.

Reversed and a new trial granted. No question having been raised as to damages, the new trial shall be limited to the issue of liability.